IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERICKA HOLMES, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:24-CV-1135-RP |
| UNIVERSITY OF TEXAS AT AUSTIN, | § § § | |
| Defendant. | § | |

**ORDER**

Before the Court is Defendant University of Texas at Austin's ("UT") Motion to Dismiss. (Dkt. 16). Plaintiff Ericka Holmes ("Plaintiff") responded, (Dkt. 19), and UT replied, (Dkt. 21). Having considered the parties' submissions, the record, and the applicable law, the Court will grant UT's motion.

**I. BACKGROUND**

The following facts are based on the allegations in Plaintiff's Original Petition, (Dkt. 1-4), which was removed to this Court. Plaintiff was employed by UT as a licensed vocational nurse in the University Health Services Department, until she was terminated. (*Id.* at 5). Plaintiff is a Black woman over 40 years of age. (*Id.*).

In December of 2022, UT hired a new Nurse Manager, who would be Plaintiff's supervisor. (*Id.*). The new supervisor, Amy Watts Garvey ("Garvey"), is a white woman below the age of 40. (*Id.*). Plaintiff alleges Garvey reassigned Plaintiff primarily to tasks that non-licensed nurses were permitted to do. (*Id.* at 8). Plaintiff also alleges Garvey had the rest of the staff trained on a new ear irrigation technique while Plaintiff was on vacation. (*Id.*). Upon her return, Plaintiff continued to use the ear-irrigation technique she was familiar with and was praised for her success. (*Id.* at 8–9). Plaintiff alleges Garvey then staged a "setup" to watch Plaintiff use the first technique and then

1

chastise her for doing so, and then again had the rest of the staff trained while Plaintiff was on vacation. (*Id.* at 9–10). Plaintiff alleges "Garvey continued with her behavior of openly questioning [Plaintiff's] work to put [Plaintiff] down in front of her co-workers and to let them know [Plaintiff] was persona non grata." (*Id.* at 10).

Near the end of March 2023, Plaintiff received a "Level 1 Reminder," which Plaintiff alleges was Garvey's "clear move to formally start the termination process." (*Id.*). The Level 1 Reminder cited specific dates, oh which Plaintiff alleges she faced no discipline or counseling. (*Id.*). Plaintiff met with human resources, "letting them know the Level 1 Reminder was unfounded, not in accordance with University rules, based on false information and that it was discriminatory." (*Id.* at 11). Plaintiff had been recording her conversations at work, including on the days cited in the Level 1 Reminder. (*Id.*). Plaintiff alleges that when Garvey learned of the recordings, she amended the write-up. (*Id.* at 11–12).

Plaintiff and Garvey continued to clash over the ear-irrigation technique, including once in front of a patient, at which time Plaintiff alleges Garvey "lied to the provider" and "stood silently while knowing the provider was misdiagnosing." (*Id.* at 12–13). Plaintiff met with the Nursing Director and shared the recordings of her conversations and a binder of notes Plaintiff maintained. (*Id.* at 13). Plaintiff alleges that after this meeting, "all neglecting parties became desperate" to "(1) find[] out what [Plaintiff] had; (2) obtain what [Plaintiff] had; and (3) get rid of [Plaintiff]." (*Id.*).

Plaintiff was asked to stop recording her conversations at work, but she refused. (*Id.* at 14–15). Plaintiff's supervisors then called her to a meeting to express concern that her recordings could have captured information protected by HIPAA. (*Id.* at 15). Plaintiff was placed on leave and asked to turn over her recordings and documents. (*Id.* at 16). She did so, and then UT asked her to sign an attestation that she had turned over all recordings and documents she had made in her fifteen years working for UT. (*Id.* at 16–17). Plaintiff expressed concerns that the attestation was too broad, and

that she could not account for every recording and document she had made in fifteen years. (*Id.* at 17–18). Plaintiff and UT engaged in a back-and-forth negotiation about the details of the attestation, and Plaintiff ultimately refused to sign. (*Id.* at 17–21).

Garvey notified Plaintiff that her employment with UT was being terminated. (*Id.* at 21). The reasons cited were: (1) "the refusal and failure to sign the Request for Audio and Transcription Attestation"; (2) "recording audio and risking capturing Protected Health Information (PHI) of University business in both office and clinical setting and storing the audio on personal mobile devices and cloud-based storage"; (3) "[r]efusal to stop recording audio in the workplace when it was requested"; and (4) "[t]he focus on your personal notebook during work time and its clinical spaces which created several concerns, including the distraction to other staff." (*Id.* at 21). Plaintiff challenged her termination and alleges UT delayed those proceedings and refused to provide names of individuals who were uncomfortable with Plaintiff's notebook. (*Id.* at 23–25). Plaintiff also alleges the termination proceedings violated provisions of UT's Handbook of Operating Procedures ("HOP"). (*Id.* at 30). Plaintiff filed complaints with the Equal Employment Opportunity Commission. (*Id.* at 23). Her termination was finalized on June 5th, 2023.

Based on these allegations, Plaintiff brings claims for race discrimination, retaliation, and hostile work environment pursuant to Title VII and the Chapter 21 of the Texas Labor Code ("TCHRA"), age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA") and the TCHRA, wrongful termination under Texas common law, and due process violations. (*Id.* at 26–30).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6),[1] a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and

---

[1] UT styles its motion as "Defendant's Motion to Dismiss Plaintiff's Original Petition Pursuant to Federal Rule of Civil Procedure 12(c)." (Dkt. 16). Rule 12(c) addresses motions for judgment on the pleadings, rather than motions to dismiss. A motion for judgment on the pleadings is appropriate "where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *NextEra Energy Cap. Holdings, Inc. v. Jackson*, 756 F. Supp. 3d 428, 439 (W.D. Tex. 2024). For example, this Court has granted a motion for judgment on the pleadings where the merits of the case concerned whether a statute facially discriminated against interstate commerce. *Id.* at 440. In contrast, the instant case raises factual disputes, such as the reason for Plaintiff's termination. Because of this, and because UT styles its motion as a motion to dismiss and argues throughout that Plaintiff fails to state her claims, the Court construes UT's motion as a motion to dismiss. Regardless, the Fifth Circuit applies the same standard to a motion under 12(c) as it does for a motion under 12(b)(6). *Id.* at 439–40.

4

matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

UT moves to dismiss on multiple grounds. UT argues (1) several of Plaintiff's claims are barred by sovereign immunity; (2) and Plaintiff fails to state her claims.

### A. Sovereign Immunity

The Eleventh Amendment typically deprives federal courts of jurisdiction over "suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). "The Fifth Circuit has consistently found that the University of Texas . . . [is] protected by sovereign immunity." *Butcher v. U.T. Health Sci. Ctr. of Houston*, No. CIV. A. H-08-CV-0244, 2008 WL 4935723, at *2 (S.D. Tex. Nov. 18, 2008); *see also Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (granting UT sovereign immunity).

UT argues it is entitled to sovereign immunity against Plaintiff's ADEA, due process, and wrongful termination claims. (Dkt. 16, at 5–7). The Court agrees. The Fifth Circuit has held that neither Texas nor Congress has waived Texas's sovereign immunity from ADEA claims. *Id.* at 469. Even when broadly construing Plaintiff's due process claim to arise under 42 U.S.C. § 1983, her claim is barred by sovereign immunity, as Congress has not abrogated sovereign immunity as to claims brought under Section 1983. *Butcher*, 2008 WL 4935723, at *2. Last, as for her wrongful

5

termination claim, Plaintiff alleges UT's "termination of Plaintiff violated specific laws, including anti-discrimination statutes, and therefore constitutes wrongful termination under Texas law." (Compl. Dkt. 1-4, at 28). Plaintiff fails to identify which statutes her claim arises under, much less that Texas has waived sovereign immunity for claims arising under those statutes. Therefore, UT is entitled to sovereign immunity against Plaintiff's ADEA, due process, and wrongful termination claims.

### B. Failure to State a Claim

#### 1. Race Discrimination

Race discrimination claims are analyzed with the same framework under Title VII and the TCHRA. *Khalfani v. Balfour Beatty Communities, L.L.C.*, 595 F. App'x 363, 365 n.1 (5th Cir. 2014). A plaintiff must allege (1) she is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021). "To satisfy the fourth element, a plaintiff must point to a comparator who was 'similarly situated' and received more favorable treatment." *Id.* at 340. Plaintiff must establish the comparator was treated more favorably under nearly identical circumstances, such as plaintiff and the comparator held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

UT argues Plaintiff fails to state a viable race discrimination claim because she has not alleged a nearly identical comparator. (Dkt. 16, at 8). The only comparator Plaintiff identifies is Garvey, a white woman under 40. (Compl., Dkt. 1-4, at 5). However, Garvey was Plaintiff's supervisor, which undercuts the allegation that Plaintiff and Garvey were working under nearly

identical circumstances. A comparator typically must share the same supervisor, not be plaintiff's supervisor. *See Lee* 574 F.3d at 260. Plaintiff alleges "[s]imilarly situated employees outside Plaintiff's protected class were treated more favorably," (Compl., Dkt. 1-4, at 27), but then follows with only "[s]pecifically, a young white female below 40 was appointed as Plaintiff's supervisor and was responsible for many of the adverse actions taken against Plaintiff," (*id.*). This presumably refers again to Garvey, who is not similarly situated, and Plaintiff fails to identify any other comparator who is. Therefore, Plaintiff fails to state a claim for race discrimination under Title VII or the TCHRA.

### 2. Age Discrimination

To state a claim for age discrimination under the TCHRA, Plaintiff must allege (1) she was a member of the protected class; (2) she was qualified for her position; (3) she was terminated by her employer; and (4) replaced by someone younger or otherwise discharged because of her age. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 642–43 (Tex. 2012). Here, UT argues Plaintiff does not allege the fourth element. (Dkt. 16, at 11–12). Nowhere in Plaintiff's complaint does she allege she was replaced by someone younger. She emphasizes that Garvey is younger than her, and she alleges "Plaintiff was treated less favorably than similarly situated younger employees." (Compl., Dkt. 1-4, at 27). She alleges this is evidenced by (1) "the appointment of a supervisor substantially younger than Plaintiff"; (2) the significant changes to Plaintiff's job responsibilities implemented by the younger supervisor"; and (3) "the exclusion of Plaintiff from training sessions while younger employees were included." (*Id.* at 28).

But missing from these allegations is any facts to support that age was a factor in Plaintiff's termination. Plaintiff complains of being assigned a younger supervisor and being excluded from training with younger employees, but Plaintiff's claim requires her to plead she was replaced by someone younger or discharged because of her age. *See Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467,

478 (Tex. App. 2013). As Plaintiff has done neither, she fails to state a claim for age discrimination under the TCHRA.

### 3. Retaliation

UT argues Plaintiff fails to allege a plausible retaliation claim under Title VII and the TCHRA. To establish a retaliation claim at the pleading stage, a plaintiff must allege (1) she participated in protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020).

UT argues Plaintiff fails to allege she participated in protected activity. In response, Plaintiff points to (1) "filing internal complaints about Garvey's falsified disciplinary actions"; (2) submitting EEOC charges alleging race/age discrimination"; (3) and an email referencing an earlier meeting "where she expressed that she was being discriminated against on the grounds of age and other factors." (Dkt. 19, at 8).

Plaintiff's complaint alleges she had two relevant meetings before she was terminated. The first when she "met with Human Resources on or about March 29, 2023, letting them know that the Level 1 Reminder was unfounded, not in accordance with University rules, based on false information and that is was discriminatory," (Compl., Dkt. 1-4, at 11), and the second when she met with the Nursing Director to "report the incident of Garvey's medical negligence and intention to commit billing fraud," (*Id.* at 13). The latter is presumably the meeting Plaintiff refers to in the email, as both occurred with the Nursing Director in April of 2023. (See Compl., Dkt. 1-4, at 13; Dkt. 19, at 8). But Plaintiff's allegations about these meetings do not support the conclusion that they constituted protected activity. Though "magic words" are not required under the TCHRA, "complaining only of harassment, hostile environment, discrimination, or bullying is not enough." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 786–87 (Tex. 2018) (internal quotation marks

omitted). Similarly, under Title VII, Plaintiff's alleged protected activity "must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 841 (5th Cir. 2010). Plaintiff must allege she tied her complaints in these meetings to an age- or race-related motivation. *See Alamo Heights*, 544 S.W.3d at 786–87. In the first meeting, Plaintiff alleges she complained the Level 1 reminder was "discriminatory," but this vague complaint is not enough to alert UT of unlawful discrimination. For example, a plaintiff complaining about "unfair work distribution, unpaid overtime, and selective enforcement of a lunch policy" without complaining about "race, color, religion, sex or national origin discrimination" is not protected by Title VII. *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010). Only the email Plaintiff references in her response mentions age, but in her complaint, Plaintiff alleges the April meeting was "to report the incident of Garvey's medical negligence and intention to commit billing fraud." (Compl., Dkt. 1-4, at 13). Without allegations that Plaintiff alerted UT to her reasonable belief that unlawful discrimination was at issue, Plaintiff alleges no protected activity and fails to state a claim for retaliation under the TCHRA or Title VII.

### 4. Hostile Work Environment

A plaintiff states a hostile work environment claim based on age discrimination if she can show that: (1) she was over the age of 40; (2) she was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 442–43 (5th Cir. 2012). A plaintiff may state a hostile work environment claim based on race discrimination by alleging (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic, e.g., race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have

9

known of the harassment and failed to take prompt remedial action. *Univ. of Texas Health Sci. Ctr. at Tyler v. Nawab*, 528 S.W.3d 631, 640–41 (Tex. App. 2017) (discussing standard for TCHRA); *see also Parker v. State of Louisiana Dep't of Educ. Special Sch. Dist.*, 323 F. App'x 321, 325 (5th Cir. 2009) (discussing same standard for Title VII).

"A hostile work environment claim is not actionable unless the alleged discrimination is objectively unreasonable." *Reed*, 701 F.3d at 443. "A workplace environment is hostile when it is 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment.'" *Id.* (quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435 (5th Cir. 2011)). "In assessing whether a claim meets that standard, courts review 'all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or it is a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance.'" *Id.* (quoting *City of Houston v. Fletcher*, 166 S.W.3d 479 (Tex. App. 2005)).

Here, Plaintiff's allegations do not rise to the high standard of objectively unreasonable. Plaintiff makes conclusory statements that she was "being subjected to the incredibly toxic and hostile work environment Garvey had created for her," (Compl., Dkt. 1-4, at 9), but she does not allege any facts to support these allegations. *See Ashcroft v. Iqbal*, 556 U.S. at 679 ("mere conclusory statements" do not suffice). Further, Plaintiff does not allege any facts to show her experience was based on her age or race. At most, Plaintiff complains she was disciplined and reprimanded, but she does not allege facts to support any instances of intimidation, ridicule, or insult based on her age or race. Accordingly, Plaintiff fails to state a claim for hostile work environment.

### C. Proposed Amendment

Lastly, in her response to UT's motion to dismiss, Plaintiff asks the Court for leave to amend her complaint, and she attaches a proposed amended complaint. (Dkt. 19, at 10–12; Dkt. 19-1).

Plaintiff proposes two substantive amendments: (1) adding Jay Hartzell, the President of the University of Texas, in his individual capacity for her Section 1983 claim; and (2) withdrawing her ADEA claim while preserving her age discrimination claim under the TCHRA. (*Id.* at 10–11).

The Federal Rules of Civil Procedure permit a party to amend its pleading "once as a matter of course," but afterwards "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002). But leave to amend "is by no means automatic." *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991). A district court may deny leave to amend if it has a "substantial reason" to do so. *Lyn–Lea Travel Corp.*, 283 F.3d at 286. The futility of amendment is one such substantial reason to deny leave to amend. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). A proposed amendment is futile if it fails to state a claim upon which relief could be granted. *Id.* at 873. Therefore, in determining futility, this Court will apply the "the same standard of legal sufficiency as applies under Rule 12(b)(6)," *id.*, as laid out above.

Here, the Court finds Plaintiff's proposed amendments are futile. Without analyzing whether Plaintiff's Section 1983 claim is viable against Hartzell via *Ex parte Young*, the Court finds adding Hartzell is futile because Plaintiff fails to state a viable Section 1983 claim regardless. Plaintiff alleges she was deprived of her property interest in her job without due process of law. (Compl, Dkt. 1-4, at 30). To succeed on such a claim, Plaintiff must first sufficiently allege she had a legally recognized property interest at stake. *Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999). Whether an employee has such an interest turns on state law, *id.*, and that property interest may be created directly by state statute, by a written contract, or by a mutually explicit understanding enforceable under state law as

an implied contract. *Langston v. San Jacinto Jr. Coll.*, 25 F. Supp. 3d 1009, 1016 (S.D. Tex. 2014) (quoting *Johnson v. Sw. Mississippi Reg'l Med. Ctr.*, 878 F.2d 856, 858 (5th Cir. 1989)).

In practice, this claim is difficult win in Texas, because "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Langston*, 25 F. Supp. 3d at 1016 (quoting *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998)). And where a plaintiff fails to include "any allegations about the terms of his employment," the Court must dismiss a due process claim. *See Langston*, 25 F. Supp. 3d at 1016–17. That is the case here. Plaintiff does not allege any terms of employment to establish she had a legally cognizable property interest at stake. In fact, the procedure that Plaintiff alleges UT violated, HOP 5-2420,[2] (Compl., Dkt. 1-4, at 30), explicitly states Plaintiff is an at-will employee. As an at-will employee, Plaintiff does not plausibly have a property interest in her continued employment. *See Johnson v. Sw. Mississippi Regl Med. Ctr.*, 878 F.2d 856, 860 (5th Cir. 1989). Accordingly, Plaintiff's proposed amendment is futile, as she still fails to state a viable due process claim.

Plaintiff's second proposed amendment, removing her ADEA claim, is also futile. Plaintiff proposes removing her ADEA claim while maintaining her age discrimination claim under the TCHRA. (Dkt. 19, at 11). However, as explained above, Plaintiff fails to state a claim for age discrimination under the TCHRA. Removing her ADEA claim does not save her parallel claim under the TCHRA. In sum, the Court denies Plaintiff's request to amend her complaint on futility grounds.

---

[2] The University of Texas at Austin University Policy Office, *Policies and Procedures for Discipline and Dismissal of Employees*, HANDBOOK OF OPERATING PROCEDURES 5-2420, https://secure4.compliancebridge.com/utexas/public/getdoc.php?file=5-2420.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendant University of Texas at Austin's Motion to Dismiss, (Dkt. 16), is **GRANTED.** Plaintiff's complaint is **DISMISSED** without prejudice.

The Court will enter final judgment by separate order.

**SIGNED** on September 2, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE